UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Troy Richard Dean,

               Petitioner,

vs.                               REPORT AND RECOMMENDATION

Warden Dave Corbo

               Respondent.         Civ. No. 04-2639 (DSD/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

I. <u>Introduction</u>

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon a Petition for a Writ of Habeas Corpus, see <u>Title 28 U.S.C. §2254</u>.

The Petitioner appears <u>pro se</u>, and the Respondent appears by Thomas R. Ragatz, Assistant Minnesota Attorney General, and J. Michael Richardson, Assistant Hennepin County Attorney.

For reasons which follow, we recommend that the Petition for a Writ of Habeas Corpus be dismissed.

## II.  Facts and Procedural Background

The Petitioner is a State prisoner, who is currently serving a 240-month sentence at Minnesota Correctional Facilities, in Stillwater, Minnesota.  The sentence resulted from the Petitioner's conviction, in Hennepin County District Court on March 20, 2002, for Attempted First Degree Murder, First Degree Assault, and First Degree Aggravated Robbery, and from the Court's subsequent imposition of a 240-month sentence for the Attempted Murder conviction, which was an upward departure, and a 58-month sentence for the Aggravated Robbery conviction, to be served concurrently.

The Petitioner appealed his conviction and sentence to the Minnesota Court of Appeals upon the following assertions:  1) the Trial Court erred in certain evidentiary rulings; 2) the conduct of the prosecutor deprived him of his right to a fair Trial; 3) his sentence violated the rule articulated in Apprendi v. New Jersey, 530 U.S. 466 (1998); 4) the Trial Court erred in granting an upward durational departure for "particular cruelty;" 5) he was denied effective assistance of counsel;  and 6) clothing was illegally seized from his girlfriend's home.  State v. Dean, 2003 WL 21321425 (Minn.App., June 10, 2003), pet. for review denied (Minn., August 19, 2003)("Dean I").  The contested evidentiary rulings included the Trial Court's decision to allow the

prosecutor to question the Defendant about a prior aggravated robbery conviction, after the Court had initially ruled to exclude that evidence pursuant to <u>State v. Spreigl</u>, 139 N.W.2d 167 (Minn. 1965),[1] as well as the Court's admission of deoxyribonucleic acid ("DNA") evidence, that was obtained through the use of the PCR-STR method of testing.[2]

In addressing the Petitioner's arguments, the Court of Appeals summarized the facts, which supported his conviction, as follows:

> Responding to an anonymous 911 call, ambulance and police crews found James Neville unconscious, severely beaten, and lying on top of a small fire with his legs burning. Neville survived his injuries but both legs had to be amputated.
>
> Steven Johnson, a co-defendant in this case, was found semi-conscious at the scene with Neville's wallet in his pocket, blood on his clothing, and what looked like a burn on his hand. Johnson was arrested. He told the police that appellant Troy Richard Dean was involved.

---

[1]In Minnesota, evidence of prior bad acts is typically referred to as <u>Spreigl</u> evidence, from the landmark Minnesota Supreme Court case of <u>State v. Spreigl</u>, 139 N.W.2d 167 (Minn. 1965). The admission of <u>Spreigl</u> evidence is governed by Rule 404(b), Minnesota Rules of Evidence.

[2]The terms PCR and STR are acronyms for "Polyermase Chain Reaction" and "Short Tandem Repeats." The Minnesota Supreme Court has described the PCR-STR method as "the testing of short tandem repeats via amplification of discrete portions of the DNA strand." <u>State v. Traylor</u>, 656 N.W.2d 885, 889 (Minn. 2003).

Police went to appellant's girlfriend's home to arrest him. Appellant was not present when the police arrived. The mother of appellant's girlfriend gave police the clothing she believed appellant had been wearing on the day of the incident. The clothing had been washed. Appellant arrived and spontaneously told police they would not find any blood on his clothes. Appellant was arrested and charged.

The clothes, including those worn by appellant at the time of his arrest, were tested for blood and subjected to DNA analysis using polymerase chain reaction short tandem repeats process, known as PCR-STR. Appellant's pants tested positive for blood despite having been washed, and the hooded shirt appellant was wearing at the time of his arrest tested positive for blood. No DNA profile was obtained from either of these items but the quilted flannel shirt that appellant was wearing at the time of his arrest had blood on it that matched Neville's DNA profile "exactly" according to the BCA forensic scientist who testified at trial.

Johnson and appellant told police that they had been drinking on the day of the incident and were sharing a bottle of vodka when they encountered Neville who began to drink from the bottle with them. Appellant asked Neville for some money for the alcohol. According to appellant, when Neville didn't respond, Johnson got a board and began to hit Neville on the head. Appellant said he left to get help and walked to a pay telephone to call 911. Neville testified that it was appellant who hit him in the back of the head, both Johnson and appellant were hitting him, and he heard appellant say "get his wallet and check his pockets for money." Appellant's girlfriend told police that appellant had told her that he was with Johnson on the day of the incident and that he, Johnson, and Neville had been

involved in a fight.  She saw that appellant's knuckles were scratched, as if he had been in a fight and she washed his clothes on the day of the incident.

Prior to trial, the state gave notice of its intent to offer four prior assaults appellant had committed between 1990 and 1998 as Spreigl evidence.  After a hearing, the district court excluded all of the offered Spreigl evidence, but noted that if appellant chose to testify, his 1998 conviction could be used for impeachment purposes.  Appellant testified at trial and on direct examination disclosed his 1998 conviction of aggravated robbery.  During cross-examination, appellant denied that he owned the shirt that the state claimed he was wearing at the time of his arrest.  The court then permitted the prosecutor to cross-examine appellant about his having lied to the police regarding the 1998 offense.  After this questioning, and after appellant was shown a booking photograph of himself wearing the shirt, he admitted that the shirt belonged to him.

Id., at *1-2.[3]

Based upon these facts, the Court of Appeals affirmed the Petitioner's convictions, finding that the Trial Court's evidentiary rulings did not constitute an abuse of discretion; that the actions of the prosecutor did not entitle the Petitioner to a new

---

[3]The Petitioner does not appear to challenge the factual findings made by the State Courts and, in any event, the Record before us contains no testimony, or other evidence which would rebut, by clear and convincing evidence, the presumption of correctness of the State Court's factual findings.  See Title 28 U.S.C. §2254(e)(1); Kinder v. Bowersox, 272 F.3d 532, 538 (8ᵗʰ Cir. 2001).  Accordingly,  for the purposes of this Petition, we accept, as our factual Record, those facts which were set forth by the Minnesota Court of Appeals in Dean I.

Trial; that the sentence issued by the Trial Court did not violate the requirements of Apprendi; that the Petitioner failed to establish an ineffective assistance of counsel claim; and that the Petitioner had waived his objection to the admissibility of the clothes seized from his girlfriend's home.[4]   A Petition for Review to the Minnesota Supreme Court, which was brought by the Petitioner, was denied on August 19, 2003.

The present Petition raises the following grounds for Habeas Corpus relief: 1) that admission of evidence pertaining to his previous conviction, as well as the admission of the DNA evidence, deprived the Petitioner of his right to a fair Trial; 2) that the Petitioner's right to a fair Trial was denied by the conduct of the prosecutor, which he describes as "commenting unfavorably on the petitioner's right to remain silent; disparaging the defense tactics; [and] inflaming the passions of the jury by attacking petitioner's character;" and 3) that his sentence was an improper upward departure under Apprendi.   The Petitioner has also argued that his sentence violated

---

[4]The Court also noted that the Petitioner had failed to advance any expectation of privacy in the clothes he turned over to his girlfriend to wash at her home and, even if he had such an expectation, the suppression of that clothing would not have affected the outcome of the Petitioner's Trial.   State v. Dean, 2003 WL 21321425 at *6 (Minn.App., June 10, 2003), pet. for review denied (Minn., August 19, 2003).

the directives articulated in the Supreme Court's decision in <u>Blakely v. Washington</u>, 542 U.S. 296 (2004).[5]

Shortly after the Petitioner filed this Petition, he filed a Petition for Post-Conviction Relief in Minnesota State Court.   See, <u>Respondent's Appendix to Memorandum in Support of Its Return</u>, <u>Docket No. 6</u>; see also, <u>Dean v. State</u>, 2005 WL 646780 (Minn.App., March 22, 2005)("Dean II").  The grounds for relief, that were asserted by the Petitioner in his Petition for Post-Conviction Relief, included a claim that the evidence presented to the Trial Court was insufficient to establish the requisite criminal intent in order to support his conviction and sentence, and that the Trial Court charged the Jury with an erroneous instruction.   The Petition for Post-Conviction Relief has since been dismissed by the Minnesota District Court and, in affirming that decision, the Minnesota Court of Appeals reiterated its position that, "[a]fter a criminal defendant has made a direct appeal, 'all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for post conviction relief." <u>Id.</u>, at *1, quoting <u>State v. Knaffla</u>, 309 Minn. 246, 252, 243

_____

[5]While the Petition makes no mention of <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), in January of 2005, we granted the Petitioner leave to Supplement the Record, in which he urged that Habeas relief be granted on the ground that his sentence was unlawful under <u>Blakely</u>.  See, <u>Docket No. 11</u>.

N.W.2d 737, 741 (1976).  It also noted the two exceptions to that rule -- where a claim is "so novel that its legal basis was not reasonably available at the time of direct appeal," or where "the defendant did not deliberately and inexcusably fail to raise the issue in the first appeal, and fairness requires review."  The Court found that neither of those exceptions applied to the Petitioner's requests for post-conviction relief.  Id.

## III.  Discussion

A.    Standard of Review.   "[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  Title 28 U.S.C. §2254(a).  "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  Estelle v. McGuire, 502 U.S. 62, 68 (1991).  As a result, before a Writ may issue, the Petitioner must establish that the State's exercise of custody over his person is an affront to the Constitution, a Federal law, or a Federal treaty.  Id.; see also, Lupien v. Clarke, 403 F.3d 615, 618 (8th Cir. 2005); Newton v. Kemna, 354 F.3d 776, 782 (8th Cir. 2004); Robinson v. Leapley, 26 F.3d 826, 829 (8th Cir. 1994).

In 1996, Congress restricted the scope of a Federal Court's review of Habeas Petitions, where the underlying claims were adjudicated in State Court.   See, Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996)("AEDPA"); see also, Lockyer v. Andrade, 538 U.S. 63, 70 (2003) ("AEDPA circumscribes a federal habeas court's review of a state court decision."). A Federal Court's authority to vitiate State Court decisions, by the granting of a Writ of Habeas Corpus, is now limited to the narrow class of claims which have been fully exhausted in the State Courts, and which involve an adjudication that either:

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

Title 28 U.S.C. §2254(d).

In a recent Supreme Court decision, the Court explained that the "contrary to," and "unreasonable application" clauses of Section 2254(d)(1), present two separate grounds on which a Federal Court may grant Habeas relief to claims adjudicated in the State Courts.  Williams v. Taylor, 529 U.S. 362 (2000).  The Court went on to instruct as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrive[d] at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decide[d] a case differently than [the Supreme Court] has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifie[d] the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applie[d] that principle to the facts of the prisoner's case.

Id. at 412-13.

The Court further explained that a consideration of a State Court's decision, under the "unreasonable application" clause, requires a Federal Court to "ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409; see also, LaFrank v. Rowley, 340 F.3d 685, 689 (8th Cir. 2003), cert. denied, 541 U.S. 950 (2004).

Under this heightened standard of review, a Federal Court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly," but "[r]ather, that application must also be unreasonable." Id. at 411; see also, Siers v. Weber, 259 F.3d 969, 972-73 (8th Cir. 2001)(examining the impact of Williams on Habeas proceedings), cert. denied, 534 U.S. 1138 (2002); Newman v. Hopkins, 247

-10-

F.3d 848, 850-51 (8th Cir. 2001), cert. denied, 536 U.S. 915 (2002); Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000), cert. denied, 532 U.S. 1024 (2001).

As a consequence, Williams affirmed the distinction, which had previously been drawn by several Circuit Courts, that the "contrary to" clause was to be used in cases addressing pure questions of law and mixed questions of law and fact, whereas the "unreasonable application" clause addressed factual determinations.  See, Evans v. Rogerson, 223 F.3d 869, 872 (8th Cir. 2000)(the "in custody" determination for Miranda purposes is a question of law subject to the first prong of Section 2254(d), when the relevant facts are undisputed); Nunes v. Mueller, 350 F.3d 1045, 1051 (9th Cir. 2003)("Ineffective assistance claims are generally resolved under the first standard, which controls both pure questions of law and mixed questions of law and fact, but the second standard applies to the extent a habeas petition challenges any factual determinations of the state court."), cert. denied, --- U.S. ---, 125 S.Ct. 808 (2004); see also, Davis v. Woodford, 333 F.3d 982, 990 (9th cir. 2003)("The first prong applies both to questions of law and to mixed questions of law and fact, Williams v. Taylor, 529 U.S. 362, 407-09 * * * (2001), while the second prong applies to decisions based on factual determinations, Miller-El v. Cockarell, 537 U.S. 322, 340 (2003).").  Therefore, when a petitioner argues that the State Court improperly applied

clearly established Supreme Court law to a particular set of facts, the Federal Courts may not grant a Writ absent a finding that such an application was unreasonable.

Additionally, Section 2254(e)(1) retains a presumption of correctness for all purely factual determinations, which are rendered by a State Tribunal, and which can, as a result, only be rebutted by the production of clear and convincing evidence to the contrary. Despite this presumption, Section 2254(d)(2) authorizes the issuance of a Writ if the State Court Judgment "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Kinder v. Bowersox, 272 F.3d 532, 538 (8th Cir. 2001); McDonald v. Bowersox, 101 F.3d 588, 592 (8th Cir. 1996)("[W]e presume state court findings of fact to be correct in habeas proceedings unless the petitioner establishes, the respondent admits, or the record shows otherwise."), cert. denied, 521 U.S. 1127 (1997). Thus, "[f]actual findings by the state court 'shall be presumed to be correct,' a presumption that will be rebutted only 'by clear and convincing evidence.'" Kinder v. Bowersox, supra at 538, citing Title 28 U.S.C. §2254(e)(1).

B.   Legal Analysis.   As stated, the Petition seeks Habeas relief on the following grounds: 1) the Trial Court erred in certain evidentiary rulings, which deprived the Petitioner of his right to a Fair Trial; 2) the Petitioner was deprived of his

-12-

right to fair Trial by misconduct on the part of the prosecutor; and 3) the Petitioner's sentence was an improper upward departure under <u>Apprendi</u> and <u>Blakely</u>. The Respondent opposes the Petition on its merits, and has also urged that the Petition should be denied for the Petitioner's failure to exhaust his State Court remedies. Each of these contentions will be addressed in turn.

        1.    <u>Failure to Exhaust State Court Remedies</u>.

        a.    <u>Standard of Review</u>. It is well-established that a Federal Court will not entertain a Petition for a Writ of Habeas Corpus on behalf of a State prisoner unless the prisoner has first exhausted all available State Court remedies. See, <u>Title 28 U.S.C. §2254(b)</u>; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 842 (1999); <u>Rose v. Lundy</u>, 455 U.S. 509 (1982); see also, <u>Armstrong v. State of Iowa</u>, --- F.3d ---, 2005 WL 1962287 at *1 (8th Cir., August 17, 2005)("Federal habeas relief is available to a petitioner after he 'has exhausted the remedies available in the courts of the State.'"), quoting <u>Title 18 U.S.C. §2254(b)(1)(A)</u>. The exhaustion of State remedies requirement is based on principles of comity and federalism, as its purpose is to ensure that State Courts are given the first opportunity to correct alleged Federal constitutional errors raised by State prisoners. <u>O'Sullivan v. Boerckel</u>, supra at 844; <u>Duncan v. Henry</u>, 513 U.S. 364, 365-66 (1995); <u>Rose v. Lundy</u>, supra at 518-19; <u>Curtiss v. Mount Pleasant</u>

-13-

Correctional Facility, 338 F.3d 851, 855 (8th Cir. 2003) ("The exhaustion requirement serves AEDPA's goal of promoting 'comity, finality, and federalism,' by giving state courts 'the first opportunity to review [the] claim,' and to 'correct' any 'constitutional violation in the first instance.'"), cert. denied, 540 U.S. 1060 (2003), quoting Carey v. Saffold, 536 U.S. 214, 220 (2002).

In order to exhaust his State Court remedies, a prisoner must fairly present his constitutional claims to the highest available State Court before seeking relief in Federal Court. O'Sullivan v. Boerckel, supra at 845; Duncan v. Henry, supra at 365-66; see also, Dixon v. Dormire, 263 F.3d 774, 777 (8th Cir. 2001); McCall v. Benson, 114 F.3d 754, 757 (8th Cir. 1997)("[B]efore we may reach the merits of a habeas petition, we must first determine whether the petitioner has fairly presented his federal constitutional claims to the state court."). Furthermore, a Habeas Petitioner must exhaust his State Court remedies with respect to **all** of the claims that he wishes to raise in a Federal Habeas Corpus Petition. A "mixed petition" -- i.e., one that includes both exhausted and unexhausted claims -- will be dismissed for non-exhaustion, or stayed, under certain circumstances, to allow the exhaustion of State remedies. Rose v. Lundy, supra at 510, 522; see also, Akins v. Kenney, 410 F.3d 451, 456 (8th Cir. 2005)("In order to determine whether a stay pending exhaustion would be appropriate

-14-

in this case, [petitioner] must be given an opportunity to demonstrate good cause for his failure to exhaust his claims first in state court, to show that his unexhausted claims are not 'plainly meritless,' and to demonstrate that he has not engaged in abusive litigation tactics or intentional delay."), citing <u>Rhines v. Weber</u>, --- U.S. ---, 125 S.Ct. 1528, 1535 (2005).

        b.   <u>Legal Analysis</u>. The Respondent argues that the Petitioner has failed to exhaust his administrative remedies because his Petition for Post-Conviction Relief in the State Court also contained challenges to his sentence and conviction. The Respondent also contends that the Federal policy, against second or subsequent Habeas Petitions, counsels in favor of dismissal, since the pendency of the Petitioner's State Court Petition for Post-Conviction relief "raises the likelihood" that the Petitioner will file a second or subsequent Petition in the future.

Here, each of the claims contained in the Petition were raised, and fully adjudicated, in the State Courts, during the Petitioner's direct appeal of his sentence and conviction. Accordingly, while second or subsequent Petitions are certainly disfavored, we decline to dismiss the Petitioner's present Petition upon the speculation that a second or subsequent Petition may be forthcoming, and we note that any such Petition would be required to satisfy the requirements of Title 28 U.S.C. §2244.

Moreover, recognizing that the Petitioner's State Court Petition for Post-Conviction Relief has now been fully adjudicated in the Minnesota Courts, see Dean II, our consideration of his current Petition is unaffected by principles of comity and federalism. As a result, we proceed to the merits of the Petition.

        2.     The Trial Court's Evidentiary Rulings.

        a.     Standard of Review. "'[F]ederal habeas corpus relief does not lie for errors of state law' * * * [and] it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, supra at 67-68 (citations omitted); Lannert v. Jones, 321 F.3d 747, 752 n. 3 (8th Cir. 2003), cert. denied, 540 U.S. 917 (2003). "Because questions concerning the admission of evidence are matters of State law, our review of such questions in a habeas corpus proceeding is limited to determining whether the [petitioner's] constitutional rights have been violated." Harris v. Bowersox, 184 F.3d 744, 752 (8th Cir. 1999), cert. denied, 528 U.S. 1097 (2000), quoting Ranier v. Department of Corrections, 914 F.2d 1067, 1072 (8th Cir. 1990); see also, Davidson v. Bowersox, supra at 1078-79 (8th Cir. 2002), cert. denied sub nom. Davison v. Luebbers, 537 U.S. 925 (2002). In this Circuit, a petitioner must prove that the asserted error was so conspicuously prejudicial, or of such magnitude, that it fatally infected the Trial and

deprived the petitioner of fundamental fairness.  See, <u>Amrine v. Bowersox</u>, 238 F.3d 1023, 1032-1033 (8th Cir. 2001), quoting <u>Mercer v. Armontrout</u>, 844 F.2d 582, 587 (8th Cir. 1988).  In conducting its review, a Federal Habeas Court must review the totality of the facts in the case, and analyze the fairness of the particular Trial under consideration.  <u>Bennett v. Lockhart</u>, 39 F.3d 848, 856 (8th Cir. 1994).

        b.    <u>Legal Analysis</u>.  Here, the Petitioner has identified the Trial Court's decision to allow the Government to question him concerning a former conviction, as well as its admission of DNA evidence, which was obtained using the PCR-STR methodology, as grounds for Habeas Corpus relief.  The Petitioner raised the same contentions on direct appeal.

As to the admission of evidence pertaining to the Petitioner's prior conviction, the Court of Appeals reviewed the Record, under the legal standards necessary to admit such evidence for impeachment purposes, as set forth in Rule 608(b), Minnesota Rules of Evidence, and concluded that the Trial Court did not abuse its discretion in admitting such evidence.  Neither the Petitioner's repetition of those same arguments, as had been raised in his direct appeal, nor the Record as a whole, provide any reason to undermine the State Courts' resolution of that claim.  Thus, the Petitioner has failed to establish that the Trial Court's admission of evidence, which  pertained to a prior

conviction, was an error so conspicuously prejudicial as to fatally infect his Trial, or deprive him of fundamental fairness.  Harris v. Bowersox, supra at 752 ("[T]here is no due process violation simply because a trial court admits evidence of a defendant's * * * prior bad acts."); Maggit v. Wyrick, 533 F.2d 383, 385 (8th Cir. 1976), cert. denied, 429 U.S. 898 (1976).

The same holds true for the Petitioner's claim that the Trial Court erred in admitting DNA evidence, which was obtained by using the PCR-STR method.  The same claim was also raised in the Petitioner's direct appeal, and rejected by the Minnesota Court of Appeals, which found that he had forfeited his right to appeal the admission of the DNA evidence, as a result of his failure to object to the admission of DNA evidence at Trial.  In so holding, the Court also observed that the Minnesota Supreme Court had recently rejected the Petitioner's argument, and found that the PCR-STR methodology was generally accepted within the scientific community.  Dean I, supra at *3, n. 1; citing State v. Traylor, 656 N.W.2d 885, 893 (Minn. 2003).  The Petitioner has failed to draw our attention to any error in the analysis of the Court of Appeals, and his  unsupported assertion that "the Minnesota Supreme Court has ruled that the PCR-STR testing methods are inadmissible in Minnesota Courts," Petition, at p. 6, is contrary to the holding, in State v. Traylor, supra at 900, that the a Court

does not abuse its discretion in admitting DNA evidence that was obtained through the use of the PCR-STR method.

In short, the Petitioner's claims are nothing more than an improper attempt to re-litigate his Trial.  See, McFarland v. Scott, 512 U.S. 849, 859 (1994)(holding that a criminal Trial is the "main event," and that the Habeas Writ should not be used to "re-litigate state trials").  Accordingly, we conclude that  the Petitioner's evidentiary complaints are precisely the type of issues that the Supreme Court has emphasized are not appropriate bases for Federal Habeas relief, see  Estelle v. McGuire, supra at 67-68.  Therefore, finding that the State Courts applied law, which is consistent with clearly established Federal law, and that the State Courts' application of their factual findings to the law was also reasonable, we recommend that the Petitioner's Petition for Habeas Corpus Relief for alleged evidentiary errors be denied.

   3.   Prosecutorial Misconduct.

      a.   Standard of Review.  Prosecutorial misconduct does not merit Habeas Corpus relief unless the prosecutor committed an error that effectively eliminated a defendant's due process right to a fair Trial.  Roberts v. Bowersox, 137 F.3d 1062, 1066 (8th Cir. 1998), citing Darden v. Wainwright, 477 U.S. 168, 181 (1986).  Thus, a Habeas petitioner "bears the **heavy burden** of showing that the

alleged improprieties were so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair." Mack v. Casper, 92 F.3d 637, 643 (8th Cir. 1996)[emphasis added], citing Jones v. Jones, 938 F.2d 838, 844-45 (8th Cir. 1991).

    b. Legal Analysis.  The Petitioner contends that he was denied a fair Trial by "the prosecutor's further, serious misconduct," which he describes as "commenting unfavorably on petitioner's right to remain silent; disparaging the defense tactics; [and] inflaming passions of jury [sic] by attacking petitioner's character." Petition, at p. 5.  In support of those assertions, the Petitioner maintains that "it was improper for the prosecutor to make statements before the jury * * * such as: 'the [defendant] must be guilty because he did not immediately talk to the police." Id.

   The Minnesota Court of Appeals considered the Petitioner's prosecutorial misconduct claim, and found it to be without merit.  Dean I, supra at *3-4.  In so finding, the Court determined that the Petitioner's characterizations of the prosecutor's comments were not supported by the Record.  In particular, the Court noted that the prosecutor had not improperly commented on the Petitioner's assertion of his constitutional right to silence, but instead, "suggested that the appellant's failure to

remain at the scene of the crime demonstrated his guilt." <u>Id.</u> at *4.  The Court's

finding was based upon the following passage from the prosecutor's closing argument:

> But instead of presenting himself and disclosing this
> evidence [of his innocence], what does he do?  He runs.
> That's an innocent man?  What does your common sense
> tell you?  Why does he need to run if he's an innocent man?

<u>Id.</u> at *4.

The Court also noted that the prosecutor's inquiry concerning the Petitioner's

awareness of his ability to bring a pretrial suppression Motion did not improperly

disparage the Petitioner's defense, and that his descriptions of the offense as

"inhuman[e]," "merciless," and "cruel," did not impermissibly inflame the passions of

the Jury, since such terms "were not an inaccurate description of the crime."  <u>Id.</u>

We have reviewed the Petitioner's allegations and, consistent with the

conclusion reached by the State Courts, we find that he simply has not presented

facts, or argument, which demonstrate that the prosecutor committed error so

egregious as to fatally infect the proceedings, and render his Trial fundamentally unfair.

<u>Mack v. Casper</u>, supra at 643.  As such, we cannot conclude that the State Court's

decision was an unreasonable application of Federal constitutional law.  <u>Williams v.</u>

<u>Taylor</u>, supra at 413.  Accordingly, we recommend that this aspect of the Petition be

denied.

4.    <u>The Petitioner's Sentence</u>.

a.    <u>Standard of Review</u>.   A criminal defendant is entitled to a Jury determination as to whether he is guilty of every element of the crime charged, beyond a reasonable doubt.  <u>United States v. Gaudin</u>, 515 U.S. 506, 510 (1995).  In 2000, the Supreme Court reviewed the historical importance of a Trial by Jury, and the requirement of proof beyond a reasonable doubt, and concluded that "[t]he historic link between verdict and judgment and the consistent limitation on judges' discretion to operate within the limits of the legal penalties provided highlight the novelty of a legislative scheme that removes the jury from the determination of a fact that, if found, exposes the criminal defendant to a penalty exceeding the maximum he would receive if punished according to the facts reflected in the jury verdict alone."  <u>Apprendi v. New Jersey</u>, supra at 482-83.  Accordingly, the Court, in <u>Apprendi</u>, held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."   <u>Apprendi v. New Jersey</u> supra at 490.

Following the Supreme Court's decision in <u>Apprendi</u>, several Courts of Appeals, including our own, interpreted the holding of <u>Apprendi</u> in such a manner that a Jury determination was not required, in order to apply "sentencing factors that

increase a defendant's guidelines range but do not increase the statutory maximum." See United States v. Evans, 285 F.3d 664, 672 (8th Cir. 2002), cert. denied, 537 U.S. 1196 (2003); see also, United States v. Francis, 367 F.3d 805, 820 (8th Cir. 2004), cert. granted and judgment vacated, --- U.S. ---,125 S.Ct. 988 (2005); United States v. Jardine, 364 F.3d 1200, 1209 (10th Cir. 2004), cert. granted and judgment vacated, --- U.S. ---, 125 S.Ct. 1024 (2005); United States v. Alvarez, 358 F.3d 1194, 1212 (9th Cir. 2004); United States v. Helton, 349 F.3d 295, 299 (6th Cir. 2003); United States v. Johnson, 335 F.3d 589, 591 (7th Cir. 2003); United States v. Randle, 304 F.3d 373, 378 (5th Cir. 2002); United States v. Garcia, 240 F.3d 180, 183 (2nd Cir. 2001); United States v. Caba, 241 F.3d 98, 101 (1st Cir. 2001); United States v. Gerrow, 232 F.3d 831, 834 (11th Cir. 2000), cert. denied, 534 U.S. 830 (2001).

Despite the agreement among the Courts of Appeals, as to the scope of Apprendi, the Supreme Court has since held to the contrary, and thereby extended the Rule in Apprendi, such that "the 'statutory maximum' for Apprendi purposes is the maximum sentence that a judge may impose **solely on the basis of the facts reflected in the jury verdict or admitted by the defendant**." Blakely v. Washington, supra at 2537 [emphasis in original], citing Ring v. Arizona, 536 U.S. 584, 602 (2002). Thus, under Blakely, where the presence of certain factors allows for

a sentence to be increased under a State's sentencing scheme, the presence of such factors must be found by a Jury, beyond a reasonable doubt.

       b.    <u>Legal Analysis</u>.  The Petitioner challenges his sentence under <u>Apprendi</u> and <u>Blakely</u>, urging that the Trial Court violated his Sixth Amendment rights by upwardly departing from the range of sentences set forth in the Minnesota Sentencing Guidelines.

     As is pertinent to the Petitioner's argument, the Petitioner's sentence was the product of his conviction of attempted first degree murder, and aggravated robbery. Under Minnesota law, a conviction for attempted first degree murder allows for a statutory maximum sentence of twenty (20) years, or two hundred and forty (240) months.  See <u>Minnesota Statutes, Section 609.17, Subdivision 4</u>(attempt to commit a crime which carries a sentence of life imprisonment may carry a sentence of not more than twenty years); <u>Minnesota Statutes Section 609.185</u>(first degree premeditated murder carries a maximum sentence of life imprisonment).  Since the Petitioner's 240-month sentence did not exceed the statutory maximum, the Minnesota Court of Appeals found that the Petitioner's sentence fully complied with the rule announced in <u>Apprendi</u>.  See <u>Dean I</u>, supra at *5.

-24-

The Petitioner contests the propriety of his sentence under <u>Blakely v. Washington</u>, supra.  The Supreme Court decided <u>Blakely</u> after the State Courts had denied the Petitioner's appeal, and affirmed his sentence, under <u>Apprendi</u>.  Therefore, we must first determine whether the rule announced in <u>Blakely</u> applies retroactively to the Petitioner's sentence, according to the process set forth in <u>Teague v. Lane</u>, 489 U.S. 288 (1989).  The Supreme Court has recently outlined that process, as follows:

> Under Teague, the determination of whether a constitutional rule of criminal procedure applies on collateral review involves a three-step process.   See, e.g., Lambrix v. Singletary, 520 U.S. 518, 527, 117 S.Ct. 517, 137 L.Ed.2d 771 (1997).   First the Court must determine when the defendant's conviction became final.   Second, it must ascertain the "legal landscape, as it then existed," Graham v. Collins, 506 U.S. 461, 468, 113 S.Ct. 892, 122 L.Ed.2d 260 (1993), and ask whether the Constitution, as interpreted by the precedent then existing, compels the rule.   Saffle [v. Parks, 494 U.S. 484, 488], 110 S.Ct. 1257 [(1990].   That is, the court must decide whether the rule is actually "new." Finally, if the rule is new, the court must decide whether it falls within any of the two exceptions to nonretroactivity. Lambrix, supra at 527, 117 S.Ct. 517.

<u>Beard v. Banks</u>, 542 U.S. 406, 124 S.Ct. 2504, 2510 (2004).

Here, the Petitioner's Petition for Review to the Minnesota Supreme Court, on his direct appeal, was denied on August 19, 2003, and, since there is no record that he filed a Petition for Certiorari, it appears that the Petitioner's conviction and sentence

became "final" on November 17, 2003.  See Casper v. Bohlen, 510 U.S. 383, 390

(1994)("A state conviction and sentence become final for purposes of retroactivity

analysis when the availability of direct appeal to the state courts has been exhausted

and the time for filing a petition for a writ of certiorari has elapsed or a timely filed

petition has been finally denied."); see Rule 13, Rules of the Supreme Court of the

United States ("Unless otherwise provided by law, a petition for a writ of certiorari to

review a judgment in any case, civil or criminal, entered by a state court of last resort

* * * is timely when filed with the Clerk of this Court within 90 days after the entry of

the judgment.).  The Supreme Court issued it's decision in Blakely, on June 24, 2004,

and accordingly, its holding was not part of the legal landscape, as it existed when the

Petitioner's conviction and sentence became final.

Moreover, given the agreement among the Courts of Appeals, concerning the

limited scope of Apprendi, to sentences that exceed the statutory maximum,  see, e.g.,

United States v. Evans, supra at 672, it is beyond question that Blakely announced a

"new" rule of constitutional law.  See Shardt v. Payne, 414 F.3d 1025, 1035 (9th Cir.

2005)("[T]he rule announced in Blakely was clearly not apparent to all reasonable

jurists, nor was it dictated by precedent."); United States v. Price, 400 F.3d 844, 849

(10th Cir. 2005).   Accordingly, under the analysis set forth in Beard, the rule

announced in <u>Blakely</u> will not be applied retroactively, unless it falls within one of two

categorical exceptions.

The two exceptions to "nonretroactivity" have been summarized by our Court

of Appeals, as follows:

> One exception is applicable when the new rule places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe, or otherwise prohibits imposition of a certain type of punishment for a class of defendants because of their status or offense.   The second exception applies when a new "watershed" rule of criminal procedure implicates the fundamental fairness and accuracy of a criminal proceeding.

<u>Nelson v. United States</u>, 184 F.3d 953, 955 (8th Cir. 1999), cert. denied, 508 U.S. 966 (1999).

The balance of authority, as well as case law from within this District, convinces us

that neither of these exceptions apply to the rule announced in <u>Blakely</u>.   See, <u>Shardt</u>

<u>v. Payne</u>, supra at 1035-1035(finding that <u>Blakely</u> did not announce a new substantive

rule, or a "watershed" procedural rule);   <u>United States v. Price</u>, supra at 845, 848-

49(same); <u>United States v. Arrington</u>, 2005 WL 1522124, at *2 (D. Minn., June 28,

2005)(same); <u>Jackson v Dingle</u>, 2005 WL 1270594 (D. Minn., May 25, 2005)(same);

see also, <u>Schiriro v. Summerlin</u>, 542 U.S. 348, ---, 124 S.Ct. 2519, 2523-2525 (2004)(

holding that the rule announced in <u>Ring v. Arizona</u>, supra, was not a substantive rule,

and was not a watershed procedural rule);[6] <u>Never Misses A Shot v. United States</u>, 413 F.3d 781, 783 (8ᵗʰ Cir. 2005)(holding that the Supreme Court's decision in <u>Booker v. United States</u>, --- U.S. ---, 125 S.Ct. 738 (1995) does not apply retroactively); <u>Verela v. United States</u>, 400 U.S. 864, 867 (11ᵗʰ Cir. 2005)(same); <u>United States v. Moss</u>, 252 F.3d 993, 997 (8ᵗʰ Cir. 2001)(finding that the Supreme Court, in <u>Apprendi</u>, did not announce a watershed rule).  Therefore, we hold that the rule announced in <u>Blakely</u> does not apply retroactively, on collateral review, and accordingly, we find that the Petitioner may not rely on <u>Blakely</u> as a ground for Habeas Corpus relief.  See, <u>In re Dean</u>, 374 F.3d 1287, 1290 (11ᵗʰ Cir. 2004)(<u>Blakely</u> does not apply retroactively on collateral review); <u>Gutierrez v. United States</u>, 2005 WL 1490361, at *1 (D. Minn., June 23, 2005)(same).

In sum, we find that the State Court's determination, that the Petitioner's sentence complied with his Sixth Amendment Rights, was not contrary to clearly established law, as it existed at the time when the Petitioner's conviction and sentence

---

[6]The rules announced in <u>Ring</u>, and <u>Blakely</u>, parallel each other to such an extent that, at least within this District, the holding in <u>Shriro v. Summerlin</u>, 542 U.S. 348, ---, 124 S.Ct. 2519, 2523-2525 (2004), has been found to be controlling on the question of whether <u>Blakely</u> applies retroactively.  See  <u>United States v. Arrington</u>, 2005 WL 1522124, at *2 (D. Minn., June 28, 2005); <u>Jackson v Dingle</u>,  2005 WL 1270594, at *1 (D. Minn., May 25, 2005).

became final.[7]  Therefore, we recommend that his Petition for Habeas relief on such

grounds be denied.

NOW, THEREFORE, It is  –

RECOMMENDED:

That the Petition for a Writ of Habeas Corpus [Docket No. 1] be dismissed,

with prejudice.

Dated: August 29, 2005          s/Raymond L. Erickson
                                Raymond L. Erickson
                                UNITED STATES MAGISTRATE JUDGE

NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and

D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by

filing with the Clerk of Court, and by serving upon all parties **by no later than**

---

[7]The Petitioner's supplement, Docket No. 11, also urges that he be granted
Habeas relief on the ground that the factors considered by the Trial Court, in granting
the upward departure -- i.e. the vulnerability of the victim, and particular cruelty -- were
improper under Minnesota State law.  Since the Petitioner has not identified any
Federal constitutional right that was violated by the consideration of those factors, we
defer to the ruling of the State Courts, and recommend that the Petitioner's request for
Habeas relief on those grounds also be denied.

**September 16, 2005,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than September 16, 2005,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.